RE:2635 IM:659

POST OFFICE [illegible]
LEASE

1. This LEASE, made and entered into this 30th day of May, 1970, by and between S.S. SILBERBLATT, INC., a New York Corporation, whose address is 25 West 45th Street, New York, New York 10036, and OAKLAND ASSOCIATES, a General Partnership organized pursuant to the laws of the State of New York, consisting of PHILIP J. LEVIN AND JANICE H. LEVIN, FRANCIS S. LEVIEN AND JANICE C. LEVIEN, and HARRY GOULD, collectively, having its principal office at c/o Philip J. Levin, 893 Route 22, North Plainfield, New Jersey, as Co-Tenants, for themselves, their heirs, executors, administrators, successor and assigns, hereinafter called the Lessor, and the UNITED STATES of AMERICA, hereinafter called the Government:

WITHNESSETH: The parties hereto for the consideration hereinafter mentioned covenant and agree as follows:

2. The Lessor hereby leases to the Government the following described premises and improvements thereupon erected for exclusive use and occupancy for postal purposes, viz:

Situate, lying and being in the City of Oakland, County of Alameda, and State of California, being more particularly bounded and described as follows:

> BEGINNING at the most northerly corner of Block 499, as shown upon that certain map of tract entitled "REVISED MAP OF THE GIBBONS PROPERTY (AT OAKLAND POINT)", filed for record in Book 1 of Maps at page 31, Alameda County Records, said point of beginning being also the point of intersection of the southeasterly line of Campbell Street and the southwesterly line of 7th Street as said Streets are shown on said map; running thence south 71° 21' 59" east 247.75 feet to the northwesterly line of Peralta Street; thence along said last-named line south 32° 17' 45" west 1025.68 feet; thence north 57° 43' 15" west 906.56 feet to the easterly line of Wood Street; thence along the last-named line north 15° 31' 32" east 733.74 feet to the southwesterly line of 7th Street; thence along the last-named line south 74° 28' 28" east 916.61 feet to the point of beginning.

3. TO HAVE AND TO HOLD the said premises with their appurtenances for the term beginning January 1, 1970, and ending December 31, 1999.

4. The Government shall pay the Lessor an annual rental of One Million, Four Hundred Seventeen Thousand, Eight Hundred Eighty Eight and 61/100 Dollars ($1,417,888.61), payable in equal installments at the end of each calendar month. Rent for part of month shall be prorated.

5. This lease may be renewed, at the option of the Government, for the following separate and consecutive terms and at the following annual rentals:

RECORDED AT REQUEST OF ATTORNEY
AT 11:30 A. M. JUN 15 1970
JACK G. BLUE
Recorder Alameda County, Calif.
1840
70- 62253

EXHIBIT A

RE:2635 IM:680

(a) First renewal term option..........5 years at $1,372,200.00 per annum

(b) Second renewal term option.........5 years at $1,372,200.00 per annum

(c) Third renewal term option..........5 years at $1,372,200.00 per annum

(d) Fourth renewal term option.........5 years at $1,300,000.00 per annum

(e) Fifth renewal term option..........5 years at $1,300,000.00 per annum

(f) Sixth renewal term option..........5 years at $1,200,000.00 per annum

(g) Seventh renewal term option........5 years at $1,100,000.00 per annum

(h) Eighth renewal term option.........5 years at $1,000,000.00 per annum

All other terms and conditions of this Lease shall remain the same. The Government will give 90 days prior written notice of exercise of any renewal term option.

6. The Government shall have the option to purchase the fee simple title to the leased premises, including the underlying land, at the following respective times and prices:

(a) At end of basic 30-year lease term............$21,000,000.00

(b) At end of first 5-year renewal term option....$21,000,000.00

(c) At end of second 5-year renewal term option...$21,000,000.00

(d) At end of third 5-year renewal term option....$20,000,000.00

(e) At end of fourth 5-year renewal term option...$19,000,000.00

(f) At end of fifth 5-year renewal term option....$18,000,000.00

(g) At end of sixth 5-year renewal term option....$18,000,000.00

(h) At end of seventh 5-year renewal term option..$17,000,000.00

(i) At end of eighth 5-year renewal term option...$16,000,000.00

in accordance with any applicable Federal statutes in effect now or hereafter while this lease is in effect; provided, however, that the Government shall give the Lessor notice of election to purchase at lease one year in advance of

70- 62253

RE:2635 IM:661

the respective times set out next above.

7. (a) The Government shall, unless herein specified to the contrary, keep the demised premises in good repair and tenantable condition, except that the Government shall not be obligated to repair the demised premises in the event of total or partial damage thereto or destruction thereof caused by fire or other casualty or calamity, Acts of God, acts of the public enemy, or acts of a stranger, the repair of which said damage or destruction shall remain the obligation of the Lessor. The term "demised premises" as used in this paragraph includes the improvements thereon and the appurtenances thereto, and any and all equipment and fixtures furnished and to be furnished by the Lessor under this Lease. The term "repair" as used in this paragraph includes repairs of every character, exterior and interior, structural and nonstructural, ordinary as well as extraordinary, foreseen as well as unforeseen, replacements and renewals. Repairs resulting from defects in building construction or installation of equipment, fixtures and appurtenances furnished by the Lessor, of which notice is given to the Lessor during the first year of the Lease term, shall be the responsibility of the Lessor, except that repair of latent defects occuring before occupancy by the Government shall remain the responsibility of the Lessor regardless of time of their discovery by the Government or any action taken or omitted by the Government. The Government's responsibilities as stated herein shall be fulfilled at such time and in such manner as it considers necessary to keep the demised premises, equipment, fixtures, improvements and appurtenances in proper condition.

(b) It is mutually understood and agreed that lubritorium mechanical equipment incidental to maintenance and servicing of vehicles, to be furnished and installed by the Lessor, shall be maintained and serviced by the Government. Further, whenever the Government shall decide that any of the items of lubritorium mechanical equipment can no longer be maintained economically, such items of equipment shall be removed from the premises by the Lessor promptly upon the request of and without cost to the Government. The Government, at its election and at its sole expense, may replace any such equipment thus removed with other suitable equipment and install the same in the demised premises, which equipment so placed in or upon or attached to the premises shall be and remain the property of the Government, and may be removed therefrom by the Government prior to the termination of the lease or any renewal thereof; the Government to repair any damage to the demised premises caused by such removal.

(c) The Government shall pay for heat, custodial services, and all utilities, including water and sewerage service, during the lease term and all renewal terms.

8. The Government may sublet all or any part of the premises or assign this

70- 62253

Lease but shall not be relieved from any obligation under this Lease by reason of any such subletting or assignment.

9. The Government shall have the right to make alterations, attach fixtures and erect additions, structures or signs in or upon the premises hereby leased, which fixtures, additions or structures so placed in, upon or attached to the said premises shall be and remain the property of the Government and may be removed or otherwise disposed of by the Government. Prior to expiration or termination of this Lease the Government shall, if required by the Lessor by notice in writing sixty days in advance of such termination, restore the premises to as good condition as that existing at the time of entering upon the same under this Lease, reasonable and ordinary wear and tear and damages by the elements or by circumstances over which the Government has no control, excepted.

10. (a) If any building or any part of it on the leased property becomes unfit for use for the purposes leased under circumstances which require the Lessor to repair as provided in paragraph 7 hereof, the Lessor shall put the same in a satisfactory condition for the purposes leased to the satisfaction of the Government. If the Lessor does not repair or restore the property as aforesaid, the Government in its discretion may cancel this Lease, PROVIDED, HOWEVER, that no such Lease cancellation action will be taken by the Government unless and until written notice is given the Lessor of the defect or deficiency complained of and the Lessor has failed to start the correction or repair work within forty-five (45) days after receipt of said written notice, and has further failed to proceed with said correction or repair work in a diligent manner until it has been accomplished, and PROVIDED FURTHER, that if the Government shall become dissatisfied with the Lessor's progress in accomplishing the repairs and corrections, or if any condition or conditions occur which would otherwise give the Government the right to cancel this Lease or to incur a cost for which it could obtain reimbursement pursuant hereto, the Government will not have said right or rights unless and until wirtten notice thereof is first given to the assignee of moneys due or to become due hereunder and the mortgagee of any mortgage on the premised hereby leased, whose names and addresses have been designated to the Government by the Lessor and the Government shall have afforded such assignee and mortgagee not less than 45 days' opportunity, in addition to the aforementioned time allotted to the Lessor, to commence within such period action necessary to correct or repair the aforesaid condition or conditions, and until such mortgagee and assignee have failed to proceed with said corrections and repairs in a diligent manner until the same have been accomplished.

(b) For any period said building or any part thereof is unfit for the purposes leased on account of Lessor's failure to perform its obligations to

70- 62253

repair hereunder, the rent shall be abated in proportion to the area determined by the Postmaster General to be rendered unavailable to the Post Office Department by reason of such condition.

(c) Unfitness for use does not include subsequent unsuitability arising from such matters as design, size or location of the building.

(d) The Government agrees to afford entry into the demised premises to the Lessor and to said mortgagee or assignee of rents at all reasonable times for the purpose of making such repairs, and the Government further agrees at the time of giving any notice to the Lessor under this paragraph ( ), to send a copy thereof to any mortgagee and assignee of rents hereinabove referred to.

(e) Nothing herein shall be construed to prohibit the Government, when it so elects and when the Lessor and such mortgagee and assignee fail to do so, from making the repairs and corrections to the leased property which are the obligations of the Lessor hereunder, or from at any time making emergency repairs, corrections, and replacements, which are the obligation of the Lessor hereunder and deducting the cost thereof from the rentals due under this Lease. In making such repairs, etc., the Government shall not do or suffer anything to be done whereby the land and buildings may be encumbered by any mechanic's lien, and shall, if a mechanic's lien be filled against the said land and buildings, purporting to be for labor and material furnished, be solely responsible for discharging the same.

11. In addition to any other remedy afforded the Government by this Lease, the Government shall have the right;

(a) to obtain reimbursement from the Lessor for the excess cost to the Government of leasing such other facilities as the Postmaster General determines to be necessary to replace the building covered by this Lease, or any part thereof, being or remaining unavailable to the Government by reason of a breach of the conditions (including required repair) of this Lease, and

(b) to make repairs of the demised premises in the event the Lessor fails to do so when this Lease requires the Lessor to make such repairs; to make the repairs for the account of the Lessor, and to obtain reimbursement from the Lessor for the cost thereof;

12. Anything herein to the contrary notwithstanding, it is understood and agreed that the Government will take no action to cancel this Lease in whole or in part unless and until written notice is given to the Lessor, to the assignee of moneys due or to become due hereunder, and to the mortgagee of any mortgage on the premises covered by the Lease, whose names and addresses have

70- 62253

RE:2635 IM·664

been given to the Government by the Lessor, and the Government shall have afforded such Lessor, assignee, and mortgagee not less than forty-five (45) days' opportunity to remedy the defect, default, or noncompliance to the satisfaction of the Government. Nothing contained in this paragraph shall affect the opportunity to correct any unfit condition as and within the time set out in paragraph 10(a) hereof.

70- 62253

13. (a) The lessor shall present to the Government the general real estate tax bills of each taxing authority for taxes due and payable on the land and buildings hereby demised when said taxes apply to any year or part thereof within the term of this lease. Presentation of said tax bills shall be made in the manner and to the office shown in subparagraph (d) hereof to permit payment of said taxes in the manner set out herein before any fine, penalty, interest or cost may be added thereto for the non-payment thereof and in time to obtain any discount allowed by the taxing authority. After the presentation of said tax bills, the Government shall pay to the lessor, as additional rent due hereunder, the net amount of said taxes by check made payable to the lessor and the taxing authority issuing said tax bill. The lessor shall thereafter promptly indorse said check and deliver the same to said taxing authority.

(b) If a part of said general real estate taxes applies to any period prior to the commencement or subsequent to the expiration of the term of this lease and the remainder of the general real estate taxes applies to the period of time within the term of this lease, the Government shall be liable to pay the lessor in the aforesaid manner only that portion of said taxes applying to the period of time within the term of this lease.

(c) In the event that general real estate taxes for any tax year or part thereof within the term hereby demised apply to the land only, the provisions of this entire tax article shall be and remain operative in the same manner and to the same extent as though said taxes applied to both land and buildings.

(d) The lessor shall furnish the Government tax bills and copies of all notices which may affect the valuation of said land and buildings for general real estate tax purposes or which may affect the levy or assessment of general real estate taxes thereon. Such notices and tax bills shall be delivered or mailed within three days from the receipt thereof by the lessor to: Chief, Real Estate Branch, Facilities Division, Post Office Department, 631 Howard Street, San Francisco, California 94106, or to such other officer as he may in writing direct. The lessor shall cause payment of said general real estate taxes to be made under protest when requested to do so by the Government. The Government may contest the amount or validity of any valuation for general real estate tax purposes or of any levy or assessment of any general real estate taxes by appropriate legal proceedings either in the name of the Government or the name of the lessor or in the names of both. The lessor upon reasonable notice and request by the Government shall join in any such proceedings, but the lessor shall not be subject to any liability for the payment of penalties, costs or expenses in connection with any proceedings brought by the Government and the Government hereby covenants to indemnify and save harmless the lessor from any such penalties, costs, or expenses. The lessor shall cooperate with the Government in any such contest or proceeding and execute any documents or pleadings required for such purpose provided the lessor shall reasonably be satisfied that the facts and data set forth in such documents or pleadings are accurate.

(e) In the event the lessor fails to present to the Government the general real estate tax bills within three days from the receipt thereof by lessor and such failure results in the addition of any fine, penalty, interest or cost to the amount of tax or the loss of any discount which would have been allowed by the taxing authority for prompt payment of tax, the lessor will be responsible and liable for payment of such fine, penalty, interest, cost or the amount of lost discount and the Government will be liable only for payment of the net taxes less such discount as would have been allowed for prompt payment.

70- 62253

RE:2635 IM·666

14. The following clause is applicable unless this contract is exempt under the rules and regulations of the Secretary of Labor issued pursuant to Executive Order No. 11246, dated September 24, 1965 (30 F.R. 12319).

During the performance of this contract, the contractor agrees as follows:

(1) The contractor will not discriminate against any employee or applicant for employment because of race, creed, color, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, creed, color, or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

(2) The contractor will, in all solicitations or advertisements for employees placed by or on behalf of the contractor, state that all qualified applicants will receive consideration for employment without regard to race, creed, color, or national origin.

(3) The contractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency contracting officer, advising the labor union or workers' representative of the contractor's commitments under Section 202 of Executive Order No. 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(4) The contractor will comply with all provisions of Executive Order No. 11246 of Sept. 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

(5) The contractor will furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(6) In the event of the contractor's noncompliance with the nondiscrimination clauses of this contract or with any of such rules, regulations, or orders, this contract may be cancelled, terminated or suspended in whole or in part and the contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 11246 of Sept. 24, 1965, and such other sanctions may be imposed and remedies involved as provided in Executive Order No. 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

(7) The contractor will include the provisions of Paragraphs (1) through (7) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order No. 11246 of Sept. 24, 1965, so that such provisions will be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions including sanctions for noncompliance: *Provided, however,* That in the event the contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the contracting agency, the contractor may request the United States to enter into such litigation to protect the interests of the United States.

(The curative period set out in Paragraph 10 herein does not control or govern the curative period which has or may be determined upon as proper in connection with this Paragraph 14.)

70- 62253

15. No member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this lease, or to any benefit to arise therefrom. Nothing, however, herein contained shall be construed to extend to any incorporated company, if the lease be for the general benefit of such corporation or company.

16. The Lessor shall, at his expense, have this lease recorded in the proper recording office.

17. It is expressly understood between the parties hereto that the terms and conditions of the Agreement to Lease executed by S.S. SILBERBLATT, INC., and accepted by the Government on February 9, 1966, including any amendments or modifications thereto, are made a part of this Lease and are to be complied with as though fully set forth herein.

This lease is also subject to the annexed supplemental agreement, dated May 30, 1970 between S.S. Silberblatt, Inc., Oakland Associates, and the United States of America (Post Office Department).

IN WITNESS WHEREOF, the parties hereto have hereunto signed and sealed these presents as of the date first written above.

SEAL

S. S. SILBERBLATT, INC.
(Corporate Name)

(A New York Corporation)
(State)

By [signature]
Its PRESIDENT
(Title)

By [signature]
Its SECRETARY
(Title)

WITNESSES:
[signature]
[signature]

OAKLAND ASSOCIATES
(Partnership Name)

By [signature]
Its Attorney in Fact
(Title)

WITNESSES:
[signature]
[signature]
[signature]

GOVERNMENT:

Approved as to Form: [signature]
Real Property & Procurement Division
Assistant General Counsel

SEAL

THE UNITED STATES OF AMERICA

By [signature]
John F. Tracy
Title DIRECTOR, REAL PROPERTY DIVISION
Contracting Officer

WITNESSES:
[signature]

70- 62253