**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| PRAETORIAN FINANCIAL INSURANCE CO., | No. C 07-05746 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket No. 7] |
| UNITED STATES OF AMERICA, *et al.* | |
| Defendants. | |

**INTRODUCTION**

Before the Court is defendants' Motion to Dismiss (the "Motion") [Docket No. 7]. Plaintiff Praetorian Financial Insurance Co. (the "Carrier") insured a landlord (the "Landlord") who leased property to defendants-tenants the United States of America and the United States Postal Service (the "Tenants"). The property suffered extensive damage allegedly due to a fire set negligently or intentionally by the Tenants' agents. In this action brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 2671, *et seq.*, the Tenants request this Court to dismiss this action under Federal Rule of Civil Procedure 12(b)(6), on the grounds that under the terms of their lease, the Landlord obtained fire insurance for the mutual benefit of *both* the Landlord and the Tenants, thus preventing the Carrier from subrogating through the Landlord against the Tenants. The Tenants also request, under the FTCA, the Court dismiss the United States Postal Service (the "USPS") as an improper party to this matter. The Court finds this matter appropriate for resolution without a hearing, under Federal Rule of Civil Procedure 78(b), and for the reasons discussed below, DENIES the motion to dismiss the Carrier's claims under Rule 12(b)(6), but GRANTS the *unopposed* motion to dismiss the USPS as a party.

**BACKGROUND**

The Carrier provided property and casualty insurance to two businesses (collectively, the "Landlord"), which on May 30, 1970, began leasing 1675 7th Street, Oakland, California (the "Premises") to the Tenants, pursuant to a lease agreement (the "Lease"). Docket No. 1 ¶¶ 2-6

(Compl.); Docket No. 8, Ex. "A" ¶ 1 (Lease).  Paragraph 7(a) of the Lease states, in part:

> The [Tenants] shall, unless herein specified to the contrary, keep the demised premises in good repair and tenantable condition, except that the [Tenants] shall not be obligated to repair the demised premises in the event of total or partial damage thereto or destruction thereof caused by fire or other casualty or calamity, Acts of God, acts of the public enemy, or acts of a stranger, the repair of which said damage or destruction shall remain the obligation of the [Landlord].

Lease ¶ 7(a).

Paragraph 9 states, in part:

> Prior to expiration or termination of this Lease the [Tenants] shall, if required by the [Landlord] by notice in writing sixty days in advance of such termination, restore the premises to as good condition as that existing at the time of entering upon the same under this Lease, reasonable and ordinary ware and tear and damages by the elements or by circumstances over which the [Tenants have] no control, excepted.

Lease ¶ 9.[1]

And, paragraph 10(a) states, in part:

> If any building or any part of it on the leased property becomes unfit for use for the purposes leased under circumstances which require the [Landlord] to repair as provided in paragraph 7 hereof, the [Landlord] shall put the same in as satisfactory condition for the purposes leased to the satisfaction of the [Tenants].  If the [Landlord] does not ..., the [Tenants] ... may cancel this Lease ....

Lease ¶ 10(a).

///

///

///

---

[1] "Rental agreements commonly require the lessee to 'yield up' the premises in the same condition as when the lease commenced, ordinarily with certain exceptions." *Fire Ins. Exch. v. Hammond*, 83 Cal.App.4th 313, 318, 99 Cal.Rptr.2d 596 (2000).  These are known as yield-up clauses or provisions.

1    On or about May 17, 2006, a fire occurred at the Premises.[2] Compl. ¶ 7. As a result, the Carrier had to pay benefits to the Landlord. *Id.* ¶ 13. On November 13, 2007, the Carrier sued the Tenants, under the FTCA, claiming they and their agents negligently or intentionally set the fire, by "rigging an electrical receptacle and timing device for the activation of timed electrical energy for cooking, production of hot water, unknown food preparation, or as a result of other intentional or unintentional actions or failure to act." *Id.* ¶¶ 8-9; Mot. at 2:14-16. The Carrier also claimed the Tenants negligently supervised their agents. Compl. ¶ 10. And, the Carrier claimed the Tenants negligently maintained the premises. *Id.* ¶ 11.

On February 15, 2008, the Tenants filed a Motion to Dismiss, claiming under *Parsons Manufacturing Corp., Inc. v. Superior Court*, 156 Cal.App.3d 1151, 203 Cal.Rptr.419 (1984), paragraph 7(a) of the lease proves the Landlord held its policy of property and casualty insurance for the mutual benefit of both the Landlord and the Tenant, thus barring the Carrier from subrogating against the Tenant. Mot. at 2:14-3:9. The Tenants also claim under the FTCA, the USPS is not a proper party to this matter. *Id.* at 3:10-11. In response, the Carrier filed an opposition, attempting to distinguish *Parsons* from this matter, and arguing that *Morris v. Warner*, 207 Cal. 498, 279 P. 152 (1929), requires a negligent tenant be held responsible for their conduct. *See* Docket No. 11 ("Opp'n"). The Carrier does not oppose dismissal of the USPS.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed if it does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint is liberally construed and all well-pleaded facts are taken as true. *Syverson v. IBM Corp.*, 472 F.3d 1072, 1075 (9th Cir. 2007). Conclusory allegations of law, unwarranted deductions of fact, or unreasonable inferences, however,

///

---

[2] The Lease's provisions were in effect. The Lease's initial term ran to December 31, 1999, and provided for eight, five-year renewal terms. Lease ¶¶ 3, 5. On November 24, 1999, the Tenants agreed to execute the first three renewal terms, as each prior term expired, extending the Lease through December 31, 2014. Docket No. 8, Ex. "B" at 1 (Lease Amend.). The Tenants then executed two renewal terms, the last one signed on January 11, 2000, extending the Lease through December 31, 2009. Docket No. 8, Exs. "C" and "D."

3

are insufficient to defeat a motion to dismiss. *See Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 n.5 (9th Cir. 2005); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Nonetheless, the incorporation by reference doctrine "permits a district court to consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.' " *In re Silicon Graphics Inc. Secs. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (citing to *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (expressly adopting doctrine), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1123-24 (9th Cir. 2002)). Otherwise "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

If dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. *See Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005), *cert. denied*, 546 U.S. 1172 (2006); *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

**ANALYSIS**

For the reasons discussed below, taking the Carrier's complaint and the Lease at face value, the Court finds under California law there is insufficient evidence to find the Landlord and the Tenants intended the Landlord to procure fire insurance for their mutual benefit. As a result, the Carrier may subrogate through the Landlord against the Tenants. In addition, the Court finds it appropriate to dismiss the USPS from this matter.

**I.   Jurisdiction**

As the Carrier sued under the FTCA, the Court has jurisdiction under 28 U.S.C. § 1346(b)(1).[3]

---

[3] Title 28 U.S.C. § 1346(b)(1) states, in part:
[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the

**II.  The Carrier may subrogate against the Tenants.**

    **A.  California law governs this matter.**

The Carrier alleges the Tenants and their agents committed wrongful acts in Oakland, California. "In the Tort Claims Act Congress has expressly stated that the Government's liability is to be determined by the application of a particular law, the law of the place where the act or omission occurred ...." *Richards v. U.S.*, 369 U.S. 1, 9 (1962); 28 U.S.C. §1346(b). Thus, the Court must look to California law to resolve this matter. In so doing, this Court will defer to decisions of the California Courts of Appeal, absent convincing evidence the California Supreme Court would decide a matter differently. *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1099 (9th Cir. 2003).

    **B.  California law allows the Carrier to subrogate against the Tenants.**

The Carrier urges the Court to follow *Morris v. Warner*, 207 Cal. 498, 279 P. 152 (1929), while the Tenants urge the Court to follow *Parsons Manufacturing Corp., Inc. v. Superior Court*, 156 Cal.App.3d 1151, 203 Cal.Rptr.419 (1984). As discussed below, the Court follows *Parsons*, and *Fire Insurance Exchange v. Hammond*, 83 Cal.App.4th 313, 99 Cal.Rptr.2d 596 (2000) ("*FIE*"), the most recent decision in this area of California law.[4] As the *FIE* court held, "In California, courts have held a lessee is not responsible for negligently caused fire damages where the lessor and lessee intended the lessor's fire policy to be for their mutual benefit." *Id.* at 317. In this case, as discussed below, taking the Carrier's complaint and the Lease at face value, there is insufficient evidence for the Court to find the Tenants and the Landlord intended the Landlord to procure fire insurance for their mutual benefit. As such, the Court holds the Carrier may subrogate against the Tenants.

///

---

    Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The Court notes neither party indicates the Carrier complied with the claim presentation and timing requirements of 28 U.S.C. § 2401(b) or § 2675(a).

[4]  The facts of *FIE* involved a lease provision which expressly required the tenants to procure fire insurance for the landlord's real estate. *FIE*, 83 Cal.App.4th at 316. Thus, *FIE*'s facts are inapplicable here. Nonetheless, its legal holdings squarely govern this matter.

///

### 1. The Carrier's Right of Subrogation under California Law

In *FIE*, the court first determined an insurance carrier's right of subrogation under California law. As that court held, "In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid." *FIE*, 83 Cal.App.4th at 317 (quoting *Fireman's Fund Ins. Co. v. Md. Cas. Co.* (1998) 65 Cal.App.4th 1279, 1291-1292, 77 Cal.Rptr.2d 296). The *FIE* court continued:

> The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to "stand in the shoes" of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have.

*FIE*, 83 Cal.App.4th at 317 (quoting *Fireman's*, 65 Cal.App.4th at 1292).

### 2. The Doctrine of the Parties' Intent

Having established a carrier's right of subrogation derives from its insured's rights, the *FIE* court noted, "In California, courts have held a lessee is not responsible for negligently caused fire damages where the lessor and lessee intended the lessor's fire policy to be for their mutual benefit." *FIE*, 83 Cal.App.4th at 317. In other words, a landlord's intent to insure its tenant, prevents the landlord from seeking a recovery from its tenant, and thus prevents the landlord's carrier from subrogating against that tenant. To explain how it reached this conclusion, the *FIE* court reviewed how the "doctrine of the parties' intent" developed in California decisions.

#### a. *Morris v. Warner*, 207 Cal. 498, 279 P. 152 (1929) did not address the issue of subrogation.

Although the *FIE* court did not address the California Supreme Court's 1929 decision in *Morris v. Warner*, the Court discusses it first, because it predates all the cases the *FIE* court did

discuss, and because the Carrier urges the Court to follow it, Opp'n at 6:14. In *Morris*, a tenant furniture manufacturer regularly burned wood waste, such as shavings, saw dust, *et seq.*, in an lot next to its rented building. 207 Cal. at 500, 504-05. One day, the waste fire got of out of control, spread, and completely destroyed the building. *Id.* The landlord sued for damages. *Id.* at 500. The parties' lease stated, in part, if the building were:

> "so badly damaged by fire, earthquake or other unusual action of the elements or any contingency beyond the control of the lessor, as to render it wholly unfit for lessee's occupancy, and if it cannot be restored with reasonable diligence within sixty (60) working days after the commencement of actual work, then this lease may be terminated within" ten days.... In case of any lesser damage by any of the above causes, the premises shall be restored with all reasonable speed by the lessor at the latter's own expense, and the lessee shall pay a reasonable rent during the period of such restoration, for such part of the premises as shall be fit for occupancy by the lessee."

*Id.* at 500.

The lease also contained covenants whereby the tenant agreed to keep the building "in a clean and wholesome condition and to comply" with all Los Angeles city ordinances, including reducing fire hazards to a minium. *Id.* at 501, 504. It also required the tenant to "keep said premises in good repair and condition at his own expense, damage by fire or elements excepted, and at the end of the term quit and surrender said premises to the lessor in good repair, damage by fire and ordinary use excepted ...." *Id.* at 501.

The Court held neither the rebuilding clause nor the other provisions of the lease "can reasonably be construed as relieving the lessee from liability to the lessor for a fire caused by his own negligence or as requiring the lessor to rebuild" due to the same conduct. *Id.* at 501-02.

Under the lease terms before this Court, *Morris* appears to favor the Carrier. As the *Morris* court noted, however, "the pleadings and evidence are absolutely silent on the insurance feature." *Id.* at 505. That is, as later courts noted, the *Morris* court did not have a subrogation question before it. *Parsons*, 156 Cal.App.3d at 1159. Thus, *Morris*' holding does not help the Court to determine

whether or not subrogation is proper here.

      **b.** ***Fred A. Chapin Lumber Co. v. Lumber Bargains, Inc.*, 189 Cal.App.2d 613, 11 Cal.Rptr. 634 (1961) does not favor the Tenants.**

The first case the *FIE* court discussed was *Fred A. Chapin Lumber Co. v. Lumber Bargains, Inc.*, in which an appellate court "inferred the lessor's policy was for the mutual benefit of the lessor and lessee where the lease *expressly* required the lessor to maintain fire insurance." *FIE*, 83 Cal.App.4th at 317 (emphasis added) (citing *Fred A. Chapin Lumber Co.*, 189 Cal.App.2d at 618-619, 622). As the Lease here has no express provision requiring the Landlord to maintain fire insurance, *Fred A. Chapin* does not support the Court barring subrogation in this matter.

      **c.** ***Liberty Mutual Fire Ins. Co. v. Auto Spring Supply Co.*, 59 Cal.App.3d 860, 131 Cal.Rptr. 211 (1976) does not favor the Tenants.**

The *FIE* Court then discussed *Liberty Mutual Fire Ins. Co. v. Auto Spring Supply Co.* In that case, a landlord rented a building to a commercial tenant, who rented to a sub-tenant. 59 Cal.App.3d at 863. The master lease *expressly* required the tenant to purchase fire insurance for the landlord's benefit. *Id.* at 863-64. The tenant and sub-tenant agreed to use the sub-tenant's rent to purchase it. *Id.* The building later suffered fire damage, and Liberty Mutual paid benefits to the landlord, then attempted to subrogate against the sub-tenant. *Id.*

The *Liberty* court held it was:

> quite obvious the parties to the lease and the sublease all intended that the proceeds of Liberty's fire insurance policy, maintained by the lessee at [the sublessee's] expense, were to constitute the protection of all parties to the lease documents against the fire loss[.] This was the commercial expectation of these parties. Stated otherwise, under the facts of this case, we regard the subtenant ... as an implied in law co-insured of [the lessee], absent an express agreement between them to the contrary.

*FIE*, 83 Cal.App.4th at 317-18 (quoting *Liberty Mutual*, 59 Cal.App.3d at 865) (modifications in *FIE* opinion).

8

1  ///

2      In contrast, in this case, there is no express provision at issue, nor is there any evidence the
3  Landlord and Tenants had any discussions about using the rent to purchase fire insurance.  Thus, it
4  does not appear they had a commercial expectation the Landlord's fire insurance would cover the
5  Tenants, nor may the Court regard the latter as the former's implied in law co-insured.  Thus,
6  *Liberty Mutual* does not support the Court barring subrogation in this matter.

7          **d.**    ***General Mills v. Goldman*, 184 F.2d 359 (8th Cir. 1950),** *cert.*
8          ***denied*, 340 U.S. 947 (1951), does not favor the Tenants.**

9      The *FIE* court noted *Liberty Mutual*'s holding relied in part on *General Mills v. Goldman*.
10  *FIE*, 83 Cal.App.4th at 318.  In *General Mills*, a lease called for a landlord to acquire title to a
11  building, then rent it to General Mills ("GM").  *General Mills*, 184 F.2d at 365.  The landlord
12  borrowed 80% of the building's purchase price, then rented it to GM.  *Id.*  The landlord's insurance
13  rated the building as a high fire risk.  *Id.*  The lease required GM to return the building in good
14  condition, "loss by fire and ordinary wear excepted[.]"  *Id.* at 360 n.1, 365.  It also barred GM from
15  doing anything that would increase the lessor's premiums.  *Id.*  It did not, however, require the lessor
16  to purchase fire insurance, though the lessor did.  *Id.* at 364.  The lease also said in the event of total
17  destruction by fire, the landlord could terminate or rebuild at its own expense.  *Id.* at 360 n.1, 365.

18      After GM allegedly caused a fire which did substantial damage, the landlord's insurer tried
19  to subrogate against GM.  *Id.* at 359-61.  The Eighth Circuit barred subrogation, however, on three
20  grounds.  *Id.* at 364-66.  First, it held the lease's yield-up provision and its bar to acts that would
21  increase the landlord's premiums showed a mutual intent that fire damages would be covered by
22  insurance and not GM, regardless of fault.  *Id.* at 365.  Second, the landlord's highly leveraged
23  purchase and unilateral right to terminate or rebuild at its own cost, showed a mutual intent that the
24  landlord would rebuild with insurance proceeds, and not look to GM.  *Id.* at 365-66.  Third, the
25  relationship between the lease and the highly-leveraged purchase of a high fire-risk building showed
26  a mutual intent to use the rent to pay the fire insurance premiums.  *Id.* at 366.

27      In this case, there is no evidence before the Court tying the Lease to the Landlord's highly-
28  leveraged purchase of a high fire-risk building.  Nor does the Lease discuss the Tenants abstaining

1  from conduct which would raise the Landlord's premiums. Thus, none of the three grounds which
2  supported a bar to subrogation in *General Mills* are found in this matter, and as such, it does not
3  support the Court barring subrogation in this matter.

       **e. *Parsons Manufacturing Corp., Inc. v. Superior Court*, 156 Cal.App.3d 1151, 203 Cal.Rptr.419 (1984) does not favor the Tenants.**

After discussing *General Mills*, the *FIE* court discussed *Parsons Manufacturing Corp., Inc. v. Superior Court*, *FIE*, 83 Cal.App.4th at 600, which the Tenants urge this Court to adopt here. In *Parsons*, a plastics manufacturer allegedly caused a fire destroying a rented facility. *Parsons*, 156 Cal.App.3d at 1155. The lease did not require the landlord to purchase fire insurance, but the landlord had, and the carrier tried to subrogate against Parsons. *Id.* The *Parsons* court noted as its case involved subrogation, but lacked an express lease provision requiring a party to purchase fire insurance, it fell in between *Morris* and *Fred A. Chapin*. *Id.* at 1158-60. In barring subrogation, the *Parsons* court relied on the terms of Parsons' lease, *General Mills*, and *Rizzuto v. Morris*, 22 Wash.App. 951, 592 P.2d 688 (1979), all of which are distinguishable from this matter.

       **i. The Lease terms here are very different from *Parsons*'.**

Parsons' lease had the following provisions. "Paragraph 2 ... admonished lessee not to take any action which would increase the premiums or cause cancellation of the insurance policy on the building." *Id.* at 1162. Paragraph 5, the yield up provision, stated Parsons "agrees on the last day of said term, or sooner termination of this lease, to surrender unto Lessor all and singular said premises with said appurtenances in the same condition as when received, reasonable use and wear thereof and damage by fire, act of God or by the elements excepted ...." *Id.* at 1158. "Paragraph 12 required the lessor to rebuild after fire damage under certain conditions. Paragraph 32 prevented the lessee from creating an unusual fire hazard, and paragraph 36 required the lessee to secure public liability, but made no mention of fire insurance on the premises." *Id.* at 1162. As such, the *Parsons* court held the lease was "rife with hints" the lessor would procure fire insurance for Parsons' benefit. *Id.* at 1162-63.

Turning to the Lease in this case, it has no provision similar to paragraphs 2, 32, or 36 of the

Parsons' lease. In contrast, "rebuild" paragraph 10(a) of the Lease here parallels paragraph 12 of Parsons' lease. But, yield-up paragraph 9 of the Lease differs in two ways from paragraph 5 of the Parsons' lease. First, paragraph 9 is only triggered by the Landlord's notice, whereas paragraph 5 is automatic. Second, paragraph 9 excepts "ordinary ware and tear and damages by the elements or by circumstances" *beyond the tenants' control*. Paragraph 5, however, excepts "reasonable use and wear ... and damage by fire, act of God or by the elements ...." Thus, while Parsons' yield-up provision supported barring subrogation arising from fire damage, the Tenants' yield-up provision only supports barring subrogation arising from fire damage *caused by circumstances beyond their control*, which is not the case here.

The Lease, however, has paragraph 7, which exempts the Tenants from having to repair damage caused by "*fire* or other casualty or calamity, Acts of God, acts of the public enemy, or acts of a stranger ...." (Emphasis added.) This paragraph, however, is subordinate to paragraph 9, because paragraph 7 begins, "The [Tenants] shall, *unless herein specified to the contrary*, keep the demised premises in good repair and tenantable condition, except that the [Tenants] shall not be obligated to repair ...." (Emphasis added.) Thus, if the Landlord gives the Tenants timely notice, under paragraph 9, then the Tenants may no longer escape liability for fire damage due to *any cause*, under paragraph 7, but may only escape liability for fire damage due to *circumstances beyond their control*, under paragraph 9.

It makes sense that paragraph 9's yield-up provision should trump paragraph 7, because the latter must be read as part of paragraph 10(a)'s rebuild provision. This paragraph states the Landlord's duty to rebuild is not triggered unless "any building or any part of it on the leased property becomes unfit for use for the purposes leased under circumstances which require the [Landlord] to repair *as provided in paragraph 7* hereof ...." (Emphasis added.) Thus, paragraph 7 provides the triggering conditions for paragraph 10(a).

Reading all three paragraphs together, the Tenants need not repair fire damage due to any cause, which damage must be repaired by the Landlord; but, at yield-up, the Landlord has the right to require the Tenants to repair any fire damage *they* caused. Thus, when the Tenants signed the Lease, they knew if they substantially fire damaged the Premises, leading to the Lease's termination,

11

1  the Landlord could exercise its right to narrow their excused conduct. That is, the Landlord could
2  broaden the Tenants' liability under the Lease, because in essence, paragraph 9 gives the Landlord
3  the right to narrow the scope of excused conduct listed in paragraph 7. As such, unlike *Parsons'*
4  lease, the Lease here lacks sufficient "hints" for the Court to find the Landlord procured fire
5  insurance for it and the Tenants' benefit. Thus, because *Parsons* relied on lease terms substantially
6  different than those before this Court, it does not support the Court barring subrogation in this
7  matter.

### ii.     *General Mills* disfavors the Tenants.

9  In *Parsons*, the court noted, "California law is surprisingly sparse in its treatment of the
10 insurer's right of subrogation against a lessee who has negligently caused a fire." *Parsons*, 156
11 Cal.App.3d at 1158. As such, the court turned to *General Mills*, then "considered by many courts to
12 be the leading modern case covering subrogation actions against negligent lessees." *Id.* at 1160.
13 Here, however, the Court already distinguished *General Mills* from this case. *See* part II.B.2.d
14 *supra*. Thus, to the extent it relies on *General Mills*, *Parsons* does not support the Court barring
15 subrogation in this matter.

### iii.    *Rizzuto* disfavors the Tenants.

17 In addition to *General Mills*, as *FIE* noted, the *Parsons* court also analyzed *Rizzuto v.*
18 *Morris*. *See FIE*, 83 Cal.App.4th at 319. In *Rizzuto*, the yield-up provision stated "[a]t the
19 expiration of said term, the lessee will quit and surrender these said premises in good state and
20 condition as they now are (ordinary wear and damage by the elements or fire excepted)." *Rizzuto*,
21 592 P.2d at 689. In addition, the landlord owed $17,000 on a rented building, worth $30,000, and
22 carried a $30,000 fire policy on it. *Id.* at 691. The tenant and landlord had discussed these issues
23 twice, including once after a small fire occurred, which preceded a larger one which completely
24 destroyed the building.[5] *Id.* at 689. At trial, however, the parties disagreed whether the landlord
25 ever said its fire insurance covered the tenant. *Id.*

26 The *Rizzuto* court held the trend of modern case law was to relieve a lessee from liability for

---

28  [5]    Allegedly, during one of these discussions, one of the landlords in jest suggested the tenants let the building burn if it caught fire. *Rizzuto*, 592 P.2d at 689.

12

fire damage caused by its own negligence where the facts showed the parties intended such a result. *Id.* at 690. It thus barred subrogation, as the tenant was expressly aware of the landlord's actions taken to protect against loss by fire. *Id.* It also held, under these facts, had the landlord wished to exclude the tenant from coverage, the landlord should have expressly notified the tenant to obtain its own coverage. *Id.* at 691. As it had not, however, its carrier could not subrogate against the tenant. *Id.*

The court based its holding on three principles. First, it held subrogation would be inequitable where a tenant's rent pays the fire insurance premiums. *Id.* Second, it held for subrogation purposes, a tenant should be viewed in privity with a landlord, not as a third-party tortfeasor. *Id.* And third, it held reasonable businesspeople understand the ordinary and usual meaning of a "loss by fire" clause includes fires caused by a tenant's negligence. *Id.*

The *Parsons* court adopted *Rizzuto*'s three principles, *Parsons*, 156 Cal.App.3d at 1161-62, none of which apply here. First, *Rizzuto*'s facts diverge sharply from those here. Most critically, there is no evidence the Tenants and the Landlord dealt with any fires on the Premises or ever discussed fire insurance. Nor is there any evidence the Landlord had a highly-leveraged ownership stake in the Premises or passed through the Tenants' rent directly to a fire insurer.[6] Thus, to the extent *Rizzuto*'s principles arise from its facts, they do not apply to this matter.

Second, *Rizzuto*'s principles are subordinate to its holding which expressly rejected any per se rules. As that court held, its "review of the cases in this area leads us to conclude that *the intent of the parties is the primary factor* considered by the courts in construing exemption clauses." *Rizzuto*, 592 P.2d at 957 (emphasis added). As discussed *infra* in part II.2.f, California and a slight majority of other courts have followed *Rizzuto*'s holding, and thus rejected its three principles as per se rules. In fact, *Parsons* itself held:

> We do not mean our opinion to state that a lessor may never shift to the lessee the burden of insuring against the lessee's negligence. We state only that, at least where the agreement *adverts* to the possibility of fire and there is no clear language or

---

[6] This is the situation the Eighth Circuit addressed in *General Mills*, which the Court distinguished from this case, in part II.2.B.d *supra*.

13

1  other admissible evidence showing an agreement to the contrary, a lease agreement
2  should be read to place on the lessor the burden of insuring the premises (as
3  distinguished from the lessee's personal property) against lessor and lessee
4  negligence. Moreover, where the lease has been drawn by the lessor, its language
5  will be construed strictly against the lessor and its insurer.

6 *Parsons*, 156 Cal.App.3d at 1162.

7  Although *Parsons* uses the term "adverts" in this passage, its ultimate holding rested on
8 Parsons' lease being "rife with hints," which is not the case here. As such, and because the parties
9 never discussed fire or fire insurance, the Court cannot find their intent, the *primary factor* it
10 considers, was for the Landlord to relieve the Tenants from liability for fire damage caused by their
11 own negligence. Thus, neither *Rizzuto* nor *Parsons* support the Court barring subrogation in this
12 matter.

13             **f.     *Fire Insurance Exchange* does not favor the Tenants.**

14  In *FIE*, the court noted *Rizzuto* derived its three principles from *Sutton v. Jondahl*, 532 P.2d
15 478 (Okl. App. 1975). *FIE*, 83 Cal.App.4th at 319; *see Rizzuto*, 592 P.2d at 691. In *Sutton*, a
16 10-year old started a fire in his family's rented house, while using an electric popcorn popper to heat
17 chemicals from his children's chemistry set. *Sutton*, 532 P.2d at 479. The court noted subrogation
18 was a fluid concept, unavailable to the carrier under the facts and circumstances before it. *Id.*
19 at 481-82. First, the court held tenant was the landlord's co-insured, just as when an insured driver
20 lets a person drive their car. *Id.* at 482. Second, it held both tenants and landlords have insurable
21 interests, and when the latter buys fire insurance, they set the rent based on the premiums, paid with
22 the rent. *Id.* Third, it held the reality of "urban apartment and single-family dwelling renting" is that
23 absent a request for a tenant to purchase fire insurance, the tenant reasonably expects the landlord's
24 insurance to cover the tenant for damage to the rental. *Id.* And lastly, the court noted to hold
25 otherwise would be to treat the tenant like a third-party tortfeasor, rather than properly in privity
26 with the landlord. *Id.*

27  As the *FIE* court noted, *Sutton* became the source for a "trend of authority" which barred
28 subrogation against tenants under the co-insured theory. *FIE*, 83 Cal.App.4th at 319. In researching

non-California cases, however, the *FIE* court found the majority of cases which denied subrogation, addressed leases which *expressly* required the lessor to purchase fire insurance and/or had a yield-up clause that *excepted* fire damages. *Id.* The court thus concluded, "[a]s in California, it appears the subrogation issue is generally resolved on a case-by-case basis, dependent on the parties' reasonable expectations in light of the particular lease terms.[7] *Id.* at 319-20. As the *FIE* court also noted, "A contract must be interpreted to give effect to the mutual, expressed intention of the parties. Where the parties have reduced their agreement to writing, their mutual intention is to be determined, whenever possible, from the language of the writing alone." *Id.* at 321 (quoting *Ben-Zvi v. Edmar Co.,* 40 Cal.App.4th 468, 473, 47 Cal.Rptr.2d 12 (1995)).

Here, the Premises is not residential and there is no Lease term which requires the Landlord to purchase fire insurance. Further, the Lease's yield-up provision does not except fire damaged caused by the Tenants. Thus, the evidence before the Court does not evince an intent by the Tenants and the Landlord for the latter to procure fire insurance for their mutual benefit. As such, neither *FIE* nor *Parsons* supports the Court barring subrogation in this matter.

### g.   Conclusion

Based on the foregoing, taking the Carrier's complaint and the Lease at face value, the Court finds under California law there is insufficient evidence to find the Landlord and the Tenants intended the Landlord to procure fire insurance for their mutual benefit. As a result, the Carrier may subrogate through the Landlord against the Tenants. The Court thus DENIES the Tenants' Motion to Dismiss.[8]

///

---

[7] *Dattel Family Ltd. P'ship v. Wintz*, --- S.W.3d ----, W2007-00081-COA-R3-CV, 2007 WL 2937794, 2007 Tenn. App. LEXIS 636 (Tenn. Ct. App. Oct. 10, 2007), *appeal denied* (Tenn. Feb. 25, 2008), noted jurisdictions fall into three categories on this issue: the anti-*Sutton*, who hold subrogation is allowed absent an express contrary provision; the *Sutton*, who hold it is *not* allowed absent an express contrary provision; and, the case-by-case who look to the parties' intent. WL at *4; LEXIS at *11-*12. The court found the anti-*Sutton* states were a distinct minority, while the case-by-case states held a slight majority over the *Sutton* states. WL at *4; LEXIS at *12-*14.

[8] Even if the Court were inclined to dismiss, none of the cases raised by the parties address intentional conduct, and thus, the Court would have to allow the matter to proceed on the Carriers' allegation of such conduct.

1  ///

2  **III.    The USPS is not a proper party under the FTCA.**

3      The FTCA provides the United States is the sole party which may be sued for personal
4  injuries arising out of the negligence of its employees. 28 U.S.C. §§ 1346(b), 2679(a); *Allen v.*
5  *Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984). Individual agencies of the United States may
6  not be sued. *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1188 (9th Cir. 1998); *Allen*,
7  749 F.2d at 1388. The Tenants have asked the Court to dismiss the USPS from this matter arising
8  under the FTCA. Mot. at 7:23-27. The request is proper under the FTCA, and the Landlord does
9  not oppose it. The Court will thus dismiss the USPS from this matter.

## CONCLUSION

Accordingly, the Court DENIES in part and GRANTS in part defendants United States of America's and United States Postal Services' Motion to Dismiss [Docket No. 7]. Specifically, the Court DENIES the defendants' motion to dismiss plaintiff Praetorian Financial Insurance Co.'s claims under Rule 12(b)(6), but the Court GRANTS defendants' motion to dismiss the United States Postal Service as a party.

IT IS SO ORDERED.

June 3, 2008

_____
Saundra Brown Armstrong
United States District Judge