UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PRAETORIAN FINANCIAL INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No: C 07-5746 SBA<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Docket 47 |

    Insurer Praetorian Financial Insurance Company ("Praetorian") brings the instant subrogation action against the United States of America ("Government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq. Praetorian seeks to recover insurance proceeds paid to its insureds to repair fire-related damage to a building which they leased to the United States Postal Service ("USPS"). The Court has original jurisdiction pursuant to 28 U.S.C. § 1446.

    The parties are presently before the Court on the Government's Motion for Summary Judgment. (Docket 47.) Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

**I.    BACKGROUND**

    **A.**    **FACTUAL SUMMARY**

    On May 30, 1970, the Government entered into a thirty-year lease with S.S. Silberblatt, Inc. and Oakland Associates (collectively "Landlord") for property located at 1675-7th Street, Oakland, California ("Property"), which was to be used as a USPS facility. (Fraher Decl. Ex.

A.) Under the terms of the Lease, the Landlord bore responsibility for repairing damage to the Property caused by fire or other calamities. Paragraph 7(a) of the Lease states:

> The Government shall, unless herein specified to the contrary, keep the demised premises in good repair and tenantable condition, except that <u>the Government shall not be obligated to repair the demised premises in the event of total or partial damage thereto or destruction thereof caused by fire or other casualty or calamity</u>, Acts of God, acts of the public enemy, or acts of a stranger, <u>the repair of which said damage or destruction shall remain the obligation of the Lessor</u>.

(Lease ¶ 7(a) (emphasis added). Under Paragraph 10(e), the Government, "when it so elects," has the right to make "emergency repairs, … which are the obligation of the Lessor hereunder" and to deduct the cost of such repairs from the rent due. (<u>Id.</u> ¶ 10(e).)

On May 17, 2006, a fire erupted on the third floor of the Property. At the time of the fire, the Property was covered by insurance obtained by the Landlord and provided by Praetorian. (Compl. ¶ 6.) The fire scene was investigated by the Oakland Fire Department ("OFD"). (Hsu Decl. Ex. D.) The OFD Report noted that "the remains of an appliance with a heating element" were observed in the area exhibiting the most fire damage, but that "it cannot be declared probable" that the appliance caused the fire. (<u>Id.</u>) The investigator also observed a "heavily burned socket" which he described as "a unique homemade device consisting of a socket and timer dial." (<u>Id.</u>) Again, while noting that it was "feasible" that this device caused the fire, the investigator stated "it also cannot be declared probable." Ultimately, the OFD Report listed the cause of the fire as "undetermined." (<u>Id.</u>)

The Landlord's insurer, Praetorian, retained Dennis Fields of Fire Cause Analysis to conduct its own investigation. (Hsu Decl. Ex. F.) Mr. Fields concluded as follows:

> The analysis of the investigation indicates that this fire resulted from an undetermined electrical fault or failure within wiring or a jury-rigged receptacle and timing device by a former employee for the activation of timed electrical energy for cooking, production of hot water, or unknown food preparation. The heat source that initiated this fire is electrical energy, in all likelihood from resistant heating within the appliance and extension cord wiring, outlet, or timing device located near the fire origin.

**1** (Id. at 13.)  Mr. Fields believed that the use of electrical appliances and the "jury rigged

**2** electrical installation" are the "most probable ignition source for this fire."  (Id. at 11.)

**3**     The Landlord and Government eventually agreed to hire Parsons, a general contractor,

**4** to perform the necessary repairs, which were completed at a cost of $616,476.  (Fraher Decl.

**5** ¶ 13.)  On February 6, 2007, the Government submitted a request to the Landlord for

**6** reimbursement in that amount.  (Id. Ex. G.)  At no time did the Landlord claim that the

**7** Government was responsible for any portion of the repair costs.  (Id.)  In addition, the

**8** Landlord's insurance adjustor had previously indicated that "it is the building owners[']

**9** responsibility under the lease to repair the fire damage…."  (Id. Ex. E.)  Approximately six

**10** months after submitting its request for reimbursement, the Landlord tendered payment to the

**11** Government.  (Id. ¶ 14.)  The Landlord's representative apologized for the delay, which he

**12** attributed to Praetorian.  (Id.)  On October 30, 2007, the Government purchased the Property

**13** from the Landlord, with the Lease terminating on or about the time of the closing.  (Id. ¶ 15.)

**14**     **B.     PROCEDURAL HISTORY**

**15**     On November 13, 2007, Praetorian, as subrogee of the Landlord, filed a Complaint in

**16** this Court against the Government alleging a single claim for negligence under the FTCA.

**17** Praetorian claims that it has the right to recover the insurance proceeds paid to repair the

**18** damage caused by the fire.  The Government moved to dismiss the Complaint under Rule

**19** 12(b)(6), which the Court denied on June 4, 2008.  (Docket 30.)  The Government has now

**20** filed a motion for summary judgment, the gravamen of which is that it is insulated from

**21** liability by virtue of Paragraph 7(a) of the Lease.[1]

**22** **II.     LEGAL STANDARD**

**23**     Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if

**24** there is no genuine issue as to any material fact and the moving party is entitled to judgment as

**25** a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The

**26**

---

**27** [1] In light of the Court's conclusions regarding the terms of the Lease, the Court does not reach the Government's alternative argument that Praetorian has failed to proffer evidence of
**28** causation.

1 moving party bears the initial burden of demonstrating the basis for the motion and identifying
2 the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions
3 on file that establish the absence of a triable issue of material fact.  Celotex Corp. v. Catrett,
4 477 U.S. 317, 323 (1986).  If the moving party meets this initial burden, the burden then shifts
5 to the non-moving party to present specific facts showing that there is a genuine issue for trial.
6 Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio
7 Corp., 475 U.S. 574, 586-87 (1986).

8       An issue of fact is "material" if, under the substantive law of the case, resolution of the
9 factual dispute might affect the outcome of the claim.  See Anderson, 477 U.S. at 248.  Factual
10 disputes are genuine if they "properly can be resolved in favor of either party." Id. at 250.
11 Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a
12 reasonable jury, viewing the evidence in the light most favorable to that party, could resolve
13 the material issue in his or her favor.  Id.  "If the evidence is merely colorable, or is not
14 significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations
15 omitted).  Only admissible evidence may be considered in ruling on a motion for motion for
16 summary judgment.  Fed.R.Civ.P. 56(e); Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir.
17 2002).

**III.   DISCUSSION**

19       "The well-known elements of a cause of action for negligence are duty, breach of duty,
20 proximate cause, and damages…. The threshold element of the existence of duty is a question
21 of law to be resolved by the court." Minch v. Department of California Highway Patrol, 140
22 Cal.App.4th 895, 900-901 (2006).  Here, the question is whether such a duty exists by virtue of
23 the Lease.

24       A lease is a contract, governed by the same rules of interpretation as other types of
25 contracts.  See ASP Properties Group, L.P. v. Fard, Inc., 133 Cal.App.4th 1257, 1266-1267
26 (2005).  Under these rules, contracts are to be interpreted to give effect to the mutual intention
27 of the parties at the time of contracting. Cal. Civ.Code § 1638; Waller v. Truck Ins. Exch., 11

Cal.4th 1, 18 (1995).[2] "[S]uch intent is to be inferred, if possible, solely from the written provisions of the contract," read in their ordinary and popular sense, unless it appears the parties used the terms in some special sense. AIU Ins. Co. v. FMC Corp., 51 Cal.3d 807, 822 (1995) (citing Cal.Civ.Code § 1639). "If the contract language is clear and explicit, it governs." Foster-Gardner, Inc. v. National Union Fire Ins. Co., 18 Cal.4th 857, 868 (1998) (internal quotations and citation omitted). The "interpretation of a contract generally presents a question of law for this court to determine[.]" DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc., 176 Cal.App.4th 697, 713 (2009).

Applying the well settled rules of contract interpretation, the Court is persuaded that the Government owes no duty to the Landlord (or Praetorian as subrogee) with respect to any damages incurred as a result of the fire on May 17, 2006. Paragraph 7(a) provides that "<u>the Government shall not be obligated to repair the demised premises in the event of total or partial damage thereto or destruction thereof caused by fire</u> …, <u>the repair of which said damage or destruction shall remain the obligation of the Lessor</u>." (Lease ¶ 7(a) (emphasis added).) Likewise, Paragraph 10(e) expressly confers upon the Government, "when it so elects," the authority to make "emergency repairs, … which are the obligation of the Lessor hereunder" and to deduct the cost of such repairs from the rent due. (Id. ¶ 10(e).) There is nothing ambiguous about these provisions, which state unequivocally that the Government bears no responsibility whatsoever for any damages caused, inter alia, by fire.

Praetorian ignores the plain meaning of Paragraphs 7(a) and 10(e) and, in fact, makes no attempt to address the Government's interpretation of these provisions. Instead, Praetorian argues that the Court previously rejected the Government's arguments in its order denying the Government's prior motion to dismiss. The Court disagrees. The question presented in that motion was whether the insurance procured by the Landlord was intended for the benefit of both the Landlord and Tenant (i.e., the Government), thereby barring Praetorian's subrogation

---

[2] The Court determines what substantive law controls the rights and liabilities of the parties by applying the choice-of-law rules of the jurisdiction where the government acts or omissions occurred. Richards v. United States, 369 U.S. 1, 11-12 (1962). Because the alleged government acts or omissions occurred within this district, California law applies.

1  action against the Government.  (Docket 30 at 3.)  In denying the motion, the Court simply
2  ruled that based on the facts alleged, it could not be determined that the parties intended that
3  the insurance procured by the Landlord was for their mutual benefit.  (Id. at 15.)[3]  At this
4  juncture, the question of whether the insurance was intended to benefit the Government as well
5  as the Landlord is not before the Court.  Rather, the dispositive issue presented is whether
6  Praetorian has any legal right to recover costs incurred to repair the damage caused by the fire.
7  Based on the unambiguous language of the Lease provisions discussed above, the Court
8  concludes that the answer is "no."

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment (Docket 47) is GRANTED.  The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated: December 3, 2009

*Saundra B. Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[3] In its ruling, the Court noted that Paragraph 7(a) is "subordinate" to Paragraph 9, which provides, in part, that "[p]rior to expiration or termination of this Lease, the Government shall, if required by Lessor by notice in writing sixty days in advance of such termination, restore the premises to as good condition as that existing at the time of entering upon the same under this Lease, reasonable and ordinary wear and tear and damages by the elements or circumstances over which the Government has no control, excepted."  (Lease ¶ 9.)  In passing, the Court noted that if the Landlord provided notice under Paragraph 9, the Government's responsibility for damages caused by fire or other causes would be limited to "circumstances beyond [the Government's] control."  (Docket 30 at 11.)  Upon further reflection, the Court finds Paragraph 7 is not subordinate to Paragraph 9, since the latter does not address the issue of who should bear the cost of repairs for fire damage to the Property.  In any event, Paragraph 9 is inapposite because it is undisputed that the Landlord never gave written notice under Paragraph 9 as a result of the Government's decision to purchase of the Property.  (Fraher Decl. ¶ 15.)